IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHOICE HOTELS INTERNATIONAL,       §
INC.,                               §
                                    §
                    Plaintiff,      §
                                    §   Civil Action No. 3:12-CV-0548-D
VS.                                 §
                                    §
GOLDMARK HOSPITALITY, LLC,          §
et al.,                             §
                                    §
                    Defendants.     §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Choice Hotels International, Inc. ("Choice Hotels") against

defendant Goldmark Hospitality, LLC ("Goldmark") for trademark infringement and false

designation of origin under the Lanham Act, 15 U.S.C. § 1051 *et seq*., common law

trademark infringement under Texas law, and common law unfair competition under Texas

law, Choice Hotels moves for summary judgment, or, alternatively, for partial summary

judgment against Goldmark. For the reasons that follow, the court grants summary judgment

as to liability on all claims but denies summary judgment as to remedies.

I

Choice Hotels franchises hotels.[1]  It offers hotel and motel services under brand names

---

[1]In deciding this motion, the court views the evidence in the light most favorable to
Goldmark as the summary judgment nonmovant and draws all reasonable inferences in its
favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex.
2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d
698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

such as Quality, Quality Inn, Quality Suites, and Quality Inn & Suites.  It also owns several registered trademarks, including U.S. Registration No. 3,053,888 (the "'888 Registration") and No. 2,732,875 (the "'875 Registration") (collectively, the "Quality Marks").  The Quality Marks are registered for use in the hotel and motel services industry.

In 2007 Choice Hotels entered into a franchise agreement ("Franchise Agreement") with Kroopa Investment, LLC ("Kroopa"), under which Kroopa operated a Quality Suites brand hotel at 13636 Goldmark Drive in Dallas (the "Goldmark Hotel Property").  In early 2010 Kroopa filed for bankruptcy but continued to operate the hotel as a debtor-in-possession.  Later that year, Choice Hotels notified Kroopa that it had defaulted under the Franchise Agreement and that, if the default remained uncured, it would terminate the Franchise Agreement.  Kroopa's reorganization plan was confirmed in 2011, but Kroopa fell into default again shortly thereafter.  When after several more months Kroopa failed to cure the default, Choice Hotels terminated the Franchise Agreement, extinguishing Kroopa's right to use the Quality Marks.

Around the same time, defendant Goldmark, as the beneficiary of a deed of trust on the Goldmark Hotel Property, commenced foreclosure proceedings.  Goldmark secured ownership of the Goldmark Hotel Property by foreclosure deed dated July 5, 2011.  Choice Hotels notified Kroopa by a September 27, 2011 letter that it had learned that the Goldmark Hotel Property was continuing to display several Quality Suites marks after the termination of the Franchise Agreement.  Choice Hotels requested that Kroopa respond no later than October 11, 2011 by providing written and photographic evidence that the marks had been

- 2 -

removed.  On October 11, 2011 Goldmark's counsel responded to Choice Hotels:

> The owners of the hotel are no longer operating as a Quality
> Suites.  They are no[w] operating as an independent hotel called
> the Amerigold Suites focusing on extended stay guests.  They
> have changed their online presence to Amerigold Suites and
> have covered the signage with temporary signs and are currently
> waiting for permanent sign permits to be approved.
> Unfortunately, I do not have pictures at this time to forward you,
> but have requested them and will forward them to you upon
> receipt.  Furthermore, they are no longer using any supplies or
> other items with the Quality Suites logo.

D. App. 12 (alterations added).

After Goldmark's counsel sent this letter to Choice Hotels, two signs bearing Quality Suites marks remained on the Goldmark Hotel Property.  The first was a large overhead sign on the top of a tall tower that was visible to traffic from the main roadway (the "Tower Sign"); the second was a much smaller sign affixed to a short pole that was visible to traffic pulling up to and through the hotel's driveway (the "Driveway Sign").  One side of the Driveway Sign—the side facing traffic on Goldmark Drive—was at one point covered with a temporary banner bearing the name Amerigold Suites.  The other side of the Driveway Sign, bearing the Quality Suites mark, remained uncovered for some time, but was eventually painted over.  The Tower Sign was not covered or painted over at any point before this lawsuit was filed.[2]

---

[2]Although these signs remained on the Goldmark Hotel Property, Goldmark appears to have undertaken some effort to re-brand the hotel as an Amerigold Suites.  The signage at the front desk of the hotel was changed to remove any Quality Suites marks; business cards at the front desk were replaced with cards bearing the Amerigold Suites name and logo; Goldmark advertised the property in a local apartment guide as an Amerigold Suites; the

Sometime during the months following Choice Hotels' receipt of the October 11, 2011 letter, Choice Hotels learned that the signage was still not covered, prompting Choice Hotels to contact Goldmark's counsel. In a letter dated February 2, 2012, Goldmark's counsel acknowledged that the Tower Sign remained uncovered but asserted that removing or covering it was cost-prohibitive:

> As stated, my client is happy to provide access to the property to allow Choice [Hotels] to remove the signs ("Quality Suites") from the property. The property was acquired by the current owner out of foreclosure and they have not operated it as Quality Suites nor have they advertised as such. . . . To arrange to have a crane and sign company remove the sign on the short notice you allowed, is cost prohibitive at this stage. Although the current owner would like to have the signs removed, they do not have the necessary funds to do so at this time which is why they have covered the front signs with their own temporary signs. Please let me know the decisions of your client.

P. App. 199 (alteration added).[3]  On February 22, 2012 Choice Hotels filed this lawsuit,

---

breakfast service, which had been a Quality Suites service, was terminated; the telephone at the hotel was answered by staff describing the hotel as an Amerigold Suites; and Goldmark ceased using the Quality Suites online reservation system.

[3]This letter is attached as part of Choice Hotels' amended appendix filed in support of its motion for summary judgment. Choice Hotels' original appendix was filed concurrently with its motion on September 13, 2013. On January 29, 2014 Choice Hotels filed a notice of *errata* regarding the original appendix. In its notice, Choice Hotels explained that several of the pages in the original appendix were mistakenly left blank and that it had only recently noticed the error. It attached an amended appendix with corrected pages. On February 5, 2014 Goldmark filed an objection to the filing of the amended appendix, arguing that the filing was untimely and should be stricken on the ground that Choice Hotels had not first obtained leave to file the document.

Assuming *arguendo* that leave of court was necessary, the court treats Choice Hotels' notice of *errata* as a motion for leave to file an amended appendix and grants the motion. It also overrules Goldmark's February 5, 2014 objection. Although in other circumstances

alleging claims for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), common law trademark infringement under Texas law, and common law unfair competition under Texas law. It moves for summary judgment, or, in the alternative, for partial summary judgment on its claims against Goldmark. Goldmark opposes the motion.

## II

Because Choice Hotels will have the burden of proof at trial on its claims, to obtain summary judgment it "must establish 'beyond peradventure all of the essential elements of the claim[s.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that Choice Hotels must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*,

the court would permit Goldmark as the nonmovant to file supplemental briefing to address the amended appendix, the court does not do so here because Goldmark filed its response to the motion for summary judgment before Choice Hotels filed its notice of *errata*, and in doing so Goldmark did not raise any challenge to Choice Hotels' original appendix. The court therefore finds no basis in the record to conclude that the inclusion of blank pages in Choice Hotels' original appendix interfered in any way with Goldmark's ability to respond to the summary judgment motion. In fact, one of the exhibits included in Choice Hotels' amended appendix—which was blank in its original appendix—was included by Goldmark in *its* appendix, which was filed in conjunction with its summary judgment response brief. *Compare* D. App. 48-50, *with* P. App. 219-21. Accordingly, all of the court's citations to "P. App." in this memorandum opinion and order refer to Choice Hotels' January 29, 2014 amended appendix.

603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).  "An issue of fact is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in that party's favor that the evidence allows, would be sufficient to support a verdict in the party's favor." *Bank One*, 878 F. Supp. at 962 (citing *Hilton v. Sw. Bell Tel. Co.*, 936 F.2d 823, 827 (5th Cir. 1991) (per curiam), *cert. denied*, 502 U.S. 1048 (1992)).  "An issue of fact is not genuine if no reasonable trier of fact could find in favor of the nonmovant." *Id.* (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated by Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

## III

Choice Hotels moves for summary judgment on its claim for trademark infringement under 15 U.S.C. § 1114, contending that it has established each essential element of the claim.  Goldmark responds that there are genuine issues of material fact regarding whether Goldmark used Choice Hotels' marks in commerce and whether there is a likelihood of confusion surrounding the marks in question.

## A

To succeed on its trademark infringement claim, Choice Hotels must first show ownership of a legally protectable mark, and it must then establish infringement of the mark. *TGI Friday's, Inc. v. Great Nw. Rests., Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th

Cir. 2008)).  Under the Lanham Act, infringement exists if a person

> uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

*Id.* (quoting *Bos. Prof'l Hockey Ass'n v. Dall. Cap & Emblem Mfg.*, 510 F.2d 1004, 1009-10 (5th Cir.1975)) (citing 15 U.S.C. § 1114) (brackets omitted).

"The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade[.]"  15 U.S.C. § 1127.  A mark is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."  *Id.*; *see also Choice Hotels Int'l, Inc. v. Patel*, 940 F.Supp.2d 532, 539 (S.D. Tex. 2013).  "A finding of 'likelihood of confusion' requires 'a probability of confusion' rather than a mere possibility."  *John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, 2012 WL 1571080, at *2 (N.D. Tex. May 4, 2012) (Fitzwater, C.J.) (citing *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009)).  "The following factors are used to determine the likelihood of confusion: (1) the strength of the plaintiff's trademark, (2) mark similarity, (3) product [or service] similarity, (4) outlet and purchaser identity, (5) advertising media similarity, (6) defendant's intent, (7) actual confusion, and (8) care exercised by potential purchasers."  *Id.* (citing *Am. Rice*, 518 F.3d at 329).  "The digits are a flexible and nonexhaustive list. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus."  *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485

(5th Cir. 2004)).

B

1

It is undisputed that Choice Hotels owns a legally protectable family of marks, including the '888 Registration and the '875 Registration. The registration of a trademark with the U.S. Patent and Trademark Office constitutes prima facie evidence of the validity of the mark and the registrant's exclusive right to use the mark for the services specified in the registration. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998); 15 U.S.C. § 1115(a). Choice Hotels has produced evidence of its registrations for each of its Quality Marks.[4] *See* P. App. 2-4, 18-48. And Goldmark concedes that Choice Hotels owns the Quality Marks. *See* Answer ¶¶ 54, 66.

2

The court next considers whether Choice Hotels has established beyond peradventure that Goldmark "used" Choice Hotels' marks in commerce. Goldmark argues that Choice Hotels has not presented any evidence that Goldmark actually used the marks because the evidence Choice Hotels has adduced merely shows that Goldmark failed to take down signage while it repurposed the Goldmark Hotel Property, which it posits is of itself

---

[4]The court grants Choice Hotels' request to take judicial notice of the registrations under Fed. R. Evid. 201. *See, e.g., Super-Krete Int'l, Inc. v. Sadleir*, 712 F.Supp.2d 1023, 1029 n.1 (C.D. Cal. 2010) (taking judicial notice of trademark registrations).

- 8 -

insufficient to prove that Goldmark used the mark.[5]  Goldmark also argues that it did not use the marks because it "actively tried to disassociate itself" from Choice Hotels by re-branding the hotel as an Amerigold Suites and positioning itself as a "higher-quality, extended-stay residence location as opposed to the one-night 'cheapy'-style hotel" operated by Kroopa, Choice Hotels' former franchisee.  D. Br. 12.  Choice Hotels responds that Goldmark's argument is flawed in two respects: it is flawed factually because Goldmark's own evidence and admissions reflect that Goldmark was operating a hotel business during the relevant period, and it is flawed legally because, even if there was some period of time between Goldmark's foreclosure on the Goldmark Hotel Property and Goldmark's commencement of the operation of the hotel, Goldmark's continued display of the Quality Marks constituted use under the Lanham Act.

The court holds that Choice Hotels has established beyond peradventure that Goldmark used Choice Hotels' marks in commerce.  Goldmark's assertion that Choice Hotels has not presented any evidence that Goldmark used the marks in commerce is not supported by the record.  For example, Choice Hotels has introduced the October 11, 2011 letter from Goldmark's counsel stating that "[the owners of the Goldmark Hotel Property are now] operating as an independent hotel called the Amerigold Suites."  P. App. 189.  This evidence establishes that, even during the period when the hotel was being repurposed, Goldmark was operating the Goldmark Hotel Property as a hotel.  The summary judgment

---

[5]The court understands Goldmark's argument to be about the application of the word "use" in 15 U.S.C. § 1114, not the phrase "in commerce."

record also includes photographs of the signs that bear the Quality Marks, and Goldmark

concedes that these signs are located on the Goldmark Hotel Property and are Choice Hotels'

*exact* marks.  *See, e.g.,* D. App. 47.  Even if there was some period of time between the

foreclosure and Goldmark's commencement of the operation of the Amerigold Suites, it is

clear from the summary judgment record that the marks remained either partially or

completely uncovered and visible to the public during that time.  Contrary to Goldmark's

unsubstantiated assertion, this evidence is sufficient to establish use under the Lanham Act.

*See* 15 U.S.C. § 1127 ("[A] mark shall be deemed to be in use in commerce . . . when it is

used or displayed in the sale or advertising of services and the services are rendered in

commerce[.]"); *Best W. Int'l v. Prime Tech Dev., L.L.C.*, 2007 U.S. Dist. LEXIS 29285, at

*24 (C.D. Ill. Apr. 20, 2007) ("Here, [defendant's] display of [plaintiff's] signs, even before

the hotel was open for business, could be fairly construed as advertising."); *see also* 4 J.

Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 25:26 (4th ed.

2013) ("[M]erely advertising an infringing mark itself is an act of infringement, apart from

any manufacturing or sale.").  Whether Goldmark intended to "dissociate itself" from Choice

Hotels and the prior franchisee during the period is irrelevant for purposes of determining

whether the marks were used.  *See Choice Hotels*, 940 F.Supp.2d at 539 ("Defendants argue

that [they] did not wish or intend to use the marks, but the use element does not depend on

intent.").  And even if Goldmark's intent were relevant to this element, Goldmark does not

offer any specific citations to the record to support its factual assertions regarding the steps

it allegedly took to dissociate itself from the Quality Marks.  Goldmark has therefore failed

to defeat Choice Hotels' showing that it is entitled to summary judgment on this element. *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]").

## C

The court now turns to whether Choice Hotels has established a likelihood of confusion.

### 1

Goldmark contends that there is a genuine issue of material fact as to this element because several digits of confusion weigh against a finding of likelihood of confusion. Choice Hotels replies that, because it is undisputed that Goldmark used Choice Hotels' exact marks, not merely similar marks, the court should not analyze the digits of confusion. It argues in the alternative that, if the court conducts a digits-of-confusion analysis, the undisputed facts weigh in Choice Hotels' favor such that a reasonable trier of fact would have to find a likelihood of confusion.

### 2

Assuming *arguendo* that a digits-of-confusion analysis is necessary when the marks are identical,[6] the court holds that Choice Hotels has established beyond peradventure that

---

[6]Although there is considerable support for the view that a digits-of-confusion analysis is unnecessary when the defendant is using the plaintiff's exact marks, the Fifth Circuit has

- 11 -

there is a likelihood of confusion. Goldmark neither disputes the strength of Choice Hotels'

marks nor the fact that they have been registered.[7] Nor does Goldmark dispute that the marks

at issue are identical to Choice Hotels' marks, conceding that the marks are Choice Hotels'

---

not explicitly recognized this rule. In *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816 (5th Cir. 1998), the Fifth Circuit held that "[t]he district court erred by failing to consider and weigh all of the digits of confusion." *Id.* at 831. In *Paulsson* the defendant seized on this language, arguing that the district court erred by not analyzing each of the eight digits. *Paulsson*, 529 F.3d at 310. The Fifth Circuit rejected this argument, noting that the *Rolex Watch* holding does not apply to cases where the defendant uses the exact mark. *Id.* at 310-11. Although Choice Hotels' position is consistent with *Paulsson*, that decision does not establish that a digits-of-confusion analysis is unnecessary when the marks are identical. Rather, *Paulsson* holds that a district court does not err when it fails to consider each and every digit of confusion when the marks are identical. It does not establish the rule that, when the marks are identical, a district court can find that there is a likelihood of confusion without considering any of the digits. Some courts have suggested that *Paulsson* should be read more broadly in cases where the marks are identical. *See, e.g., Choice Hotels Int'l, Inc. v. Bhakta*, 2013 WL 1403526, at *3 (S.D. Tex. Apr. 5, 2013) ("The likelihood-of-confusion test is met as a matter of law when the defendants are using a plaintiff's exact marks as opposed to merely similar marks.") (citing *Paulsson*); *Coach Inc. v. Sassy Couture*, 2012 WL 162366, at *5 (W.D. Tex. Jan. 19, 2012) (citing *Paulsson* and noting that "analysis of the digits of confusion is 'inapplicable to the facts of [a] case where the [Defendant] used the exact same mark'"); *cf. Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F.Supp.2d 995, 1007 n.11 (S.D. Tex. 2000) ("Generally, a likelihood of confusion analysis involves a factual inquiry into several different factors. However, in the case of a counterfeit mark, likelihood of confusion is clear.") (citation omitted). But in the present case, because even under a digits-of-confusion analysis there is no genuine issue of material fact as to likelihood of confusion, the court need not decide whether this analysis is necessary where the marks are identical. *See, e.g., Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1088 (D. Md. 1995) ("Where, as here, the goods distributed by Defendants are intentional copies and virtually identical to the trademark owner's goods, likelihood of confusion may be established at the summary judgment stage.").

[7]The '875 Registration and the '888 Registration, as well as other registrations in the Quality Marks, have become incontestable under 15 U.S.C. § 1065.

exact marks.[8]  Thus the first two digits of confusion weigh strongly in favor of a likelihood

of confusion.

3

The next factor is the similarity of products or services provided by Goldmark and

Choice Hotels.  Without specific citations to the record, Goldmark asserts that "the evidence

put forth by Defendant establishes that Defendant has put in significant effort to distinguish

its services from those of Plaintiff and to establish itself as a higher-quality extended-stay

residence location as opposed to the one-night 'cheapy'-style hotel operated under Plaintiff's

flag."  D. Resp. 14.  Even assuming *arguendo* that Goldmark positioned itself as a higher-

quality, extended-stay residence compared to the hotel operated by Kroopa under the

Franchise Agreement,[9] it is undisputed that it still held itself out as a hotel.  *See, e.g.,* D. App.

---

[8]Goldmark asserts that Choice Hotels "caused" the marks to be placed on the Goldmark Hotel Property in the first place, apparently suggesting that Goldmark is not liable for trademark infringement because Choice Hotels entered into a franchise agreement with Kroopa and Goldmark never agreed to such an arrangement.  *See* D. Resp. 14.  This argument lacks force.  Goldmark instituted foreclosure proceedings on the Goldmark Hotel Property and failed to remove or cover the marks in question for months after assuming ownership of the Goldmark Hotel Property.  Although Goldmark was not a party to the Franchise Agreement, Goldmark assumed responsibility for complying with applicable trademark laws when it foreclosed on the Goldmark Hotel Property.  That in doing so Goldmark would be required to pay for the removal of the marks is simply a cost of doing business after foreclosing on the Goldmark Hotel Property and choosing to operate it as a hotel.

[9]The only record citations found anywhere in Goldmark's response brief on these factors are located in the section entitled ,"Factual Background."  Most of these citations are to statements in the affidavit of Timothy Barton ("Barton"), Goldmark's managing member and records custodian.

By separate motion, Choice Hotels moves on various grounds to strike certain

12 ("[The current owners of the Goldmark Hotel Property are now] operating as an independent hotel called the Amerigold Suites focusing on extended stay guests."); P. App. 213, 218.  And although there is evidence to support Goldmark's assertion that it attempted to attract customers who would stay for longer periods of time than the typical one- or two-night guest at a hotel, it is also undisputed that Goldmark advertised itself to short-term guests as well.  *See, e.g.,* D. App. 33 (advertisement stating that "[t]his is a perfect place for people looking for a short or long-term stay for one great monthly price.").  As for Goldmark's characterization of Choice Hotels, it offers no evidence about the quality of Choice Hotels' services to support its claim that the services provided by Goldmark are dissimilar to those provided by Choice Hotels.  Thus the court concludes that, despite some differences in the services provided by Goldmark and those provided by Kroopa under the Franchise Agreement, there is still a significant degree of similarity between the services provided by Goldmark and Choice Hotels, because the undisputed evidence establishes that both entities are in the business of hotel operations.  Thus the third digit of confusion weighs

---

statements made in Barton's affidavit.  Goldmark has not responded to the motion to strike. The court grants the motion in part and denies it in part as moot.  The court grants the motion as to Barton's statements that the Quality Marks "carried very little value" and that "there existed no likelihood of brand confusion" because these statements are improper legal conclusions under Fed. R. Evid. 702.  *See, e.g., C.P. Interests, Inc. v. Ca. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) (citing *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)).  Choice Hotels' remaining objections are overruled as moot because, even if the court considers the statements or photographs to which Choice Hotels objects, they do not create a genuine issue of material fact that precludes granting of summary judgment as to liability.

- 14 -

in favor of a likelihood of confusion.[10]

4

The fourth factor is outlet and purchaser identity.  Again without offering specific citations to the record, Goldmark contends that it services a different market from Choice Hotels because it focuses on an "upper-scale extended-stay market" while Choice Hotels services a "quick-stay market," and because it uses a different online reservation system from Choice Hotels' online reservation system.  D. Resp. 14-15.  Choice Hotels replies that Goldmark has failed to offer competent summary judgment evidence to support these assertions.

Although this factor is analytically distinct from the third factor discussed above, the arguments and evidence presented by the parties overlap with those presented regarding product or service similarity.  Again assuming *arguendo* that Goldmark's clientele is somewhat different from Choice Hotels' clientele and that Goldmark uses a different online reservation system, it is undisputed that both entities operate hotels.  Furthermore, Goldmark does not offer any evidence about how many of its customers used its online reservation system.

---

[10]This factor is to be considered on a spectrum, because "[t]he greater the similarity between the products and services, the greater the likelihood of confusion."  *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980).  The services rendered by Choice Hotels and Goldmark need not be identical in order to be deemed similar for purposes of applying the digits-of-confusion analysis.  *See Beef/Eater Rests., Inc. v. James Burrough Ltd.*, 398 F.2d 637, 639 (5th Cir. 1968) (noting that "parties need not be in competition and that the goods or services need not be identical" to support finding of likelihood of confusion).

Goldmark also relies on Barton's affidavit, in which he avers:

> The towering sign was itself not visible to drive-up traffic [from the highway]. . . .  As for the smaller adjacent streets, because the sign is so high, it is almost impossible to see from the streets below[.] . . .  Again, to the extent that it is visible, it is quickly concealed by trees to moving traffic.

Barton Aff. 5 (alterations added).[11]  This statement does not create a genuine issue of material fact as to whether the signs were visible, because it does not deny the fact that the Tower Sign *is* visible to the public; it merely states that it is visible only for a short time.  Choice Hotels disputes this statement in Barton's affidavit, contending that the sign is not concealed by trees and that it is easily visible from the surrounding roadways.  It points to photographs of the sign in which the trees do not obstruct the sign from view.  *See, e.g.,* P. App. 196. Viewing the evidence, however, in the light most favorable to Goldmark as the nonmovant and drawing all reasonable inferences in its favor, the court assumes that the Tower Sign "was only briefly visible from the street before it is concealed by trees."  Barton Aff. 4.

Because it is undisputed that the Tower Sign and the Driveway Sign remained visible to traffic on public roadways, the fact that some of Goldmark's customers may have used its online reservation system before observing the signs does not create a genuine issue of material fact concerning the likelihood of confusion.

---

[11]The court is citing the Barton affidavit in this manner because Goldmark attached the affidavit to its response brief rather than include it in its appendix.  Although doing so was procedurally improper, the court will consider the affidavit because doing so has not interfered with the decisional process of the court.

5

The fifth factor is the similarity of advertising media used.  Goldmark maintains that this factor militates against a finding of likelihood of confusion because Goldmark never advertised itself as associated with Choice Hotels; Goldmark and Choice Hotels have different websites, online reservation systems, and different Internet domain names; and Goldmark removed some of the signage bearing the Quality Marks after foreclosing on the Goldmark Hotel Property.  Choice Hotels replies that it is undisputed that the Tower Sign and the Driveway Sign on the Goldmark Hotel Property remained exposed to the public for months after the foreclosure and that such signage is clearly a form of advertising.

Neither party has presented evidence sufficient to compare the parties' overall advertising approaches, but it is undisputed that both the Tower Sign and Driveway Sign remained visible to the public for months following the foreclosure.  Goldmark has adduced evidence that one side of the Driveway Sign was covered with a temporary banner bearing the Amerigold Suites name and logo and then eventually painted over, but it concedes that the other side of the sign—which was exposed to customers who drove through the Goldmark Hotel Property's driveway—remained uncovered.  He also concedes that the Tower Sign was not covered or painted over at any point before Choice Hotels filed this lawsuit.  The court concludes that the fifth factor weighs in favor of a finding of likelihood of confusion.

6

The sixth factor is Goldmark's intent.  Goldmark argues that it was always its intent to distance itself from the Quality Marks and the reputation of the Goldmark Hotel Property that was developed under Kroopa's ownership.  It asserts that evidence of its intent "is indicated by its removal or concealment of each and every feasible indicator of the Choice marks." D. Resp. 15.  But the undisputed summary judgment evidence shows that both the Driveway Sign and Tower Sign remained completely uncovered until after Goldmark sent its September 27, 2011 cease-and-desist letter to the General Manager of the Goldmark Hotel Property, despite the fact that Goldmark acquired ownership of the Goldmark Hotel Property by foreclosure deed dated July 5, 2011; that Goldmark's counsel misrepresented to Choice Hotels in the October 11, 2011 letter that both signs were covered by temporary banners when in fact at least the Tower Sign remained uncovered; that although one side of the Driveway Sign was covered by a temporary banner, the other side remained uncovered until it was eventually painted over; and that the Tower Sign remained completely uncovered and was not painted over at any time before the filing of this lawsuit in February 2012.  The fact that covering or removing the signs would be costly tends to support Goldmark's theory that it retained the signs merely because they would be expensive to remove rather than because it intended to derive a benefit from the reputation of Choice Hotels.  But the fact that removing the signs would be costly does not excuse trademark infringement, and the undisputed evidence establishes that signs bearing Choice Hotels' exact marks remained on the Goldmark Hotel Property for months following foreclosure, and after Choice Hotels

repeatedly informed Goldmark of its trademark claim.  The court concludes that the sixth

factor does not favor either party.

7

The seventh factor is actual confusion.  Goldmark maintains that Choice Hotels has

not adduced any evidence of actual confusion.  Choice Hotels does not present evidence of

its own regarding this factor, but it contends that evidence produced by Goldmark supports

an inference of actual confusion.  Goldmark has introduced evidence that there were many

reported instances of criminal conduct occurring on the Goldmark Hotel Property while

Kroopa operated the property.  *See, e.g.,* D. App. 154.  It presents this evidence, in part, to

show that Goldmark had a vested interest in distancing itself from Choice Hotels' family of

marks.  Citing Barton's affidavit, Goldmark states in its summary judgment response that,

"[o]nce Goldmark took over the property in July of 2011 it was the increasingly rare

prostitute or drug dealer that formerly frequented the Quality Suites that returned to the

Amerigold Suites facility to continue their illegal business practices." D. Resp. 7.[12]  Choice

---

[12]In support of its response, Goldmark offers hundreds of pages of police reports
regarding alleged instances of criminal activity that occurred on the Goldmark Hotel Property
during Kroopa's ownership.  *See* D. App. 67-420.  Goldmark requests that the court take
judicial notice of these reports under Fed. R. Evid. 201.  It argues that judicial notice is
appropriate because the authenticity of the reports can be openly, clearly, and easily
ascertained.  The court declines to take judicial notice of these documents.
Goldmark downloaded the records from a website, which includes the following
disclaimer, which is prominently displayed on the first page:

> This information reflects crimes as reported to the Dallas Police
> Department as of the current date.  Crime classifications are
> based upon preliminary information supplied to the Dallas

Hotels argues that this is an admission by Goldmark that certain customers—an alleged group of prostitutes and drug dealers—were actually confused, because they returned thinking that the Goldmark Hotel Property was still a Quality Suites hotel.

The court concludes that this factor does not weigh strongly in favor of either party. Although Choice Hotels' interpretation of Goldmark's argument is plausible, it does not establish that the customers returned *because* they believed the Goldmark Hotel Property was a Quality Suites; they may have returned simply because they were familiar with the location.[13] Neither party has offered evidence about the number of customers who purchased lodging at the Goldmark Hotel Property before and after the foreclosure, or evidence about the reasons the customers chose to stay there. Accordingly, this factor does not figure prominently in its digits-of-confusion analysis. *Cf. Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 506 (5th Cir. 1980) (evidence of actual confusion is unnecessary

---

Police Department by the reporting parties and the preliminary classifications may be changed at a later date based upon additional investigation. Therefore, the Dallas Police Department does not guarantee (either expressed or implied) the accuracy, completeness, timeliness, or correct sequencing of the information contained herein and the information should not be used for comparison purposes over time.

Dallas Police Department, *Disclaimer and Restriction on Use*, http://policereports.dallaspolice.net (last visited Feb. 19, 2014). In light of this explicit disclaimer of the accuracy or completeness of the police reports downloaded from the website, the court denies Goldmark's request to take judicial notice.

[13]From a public relations standpoint, Choice Hotels might prefer this explanation over the conclusion that Quality Suites hotels are a preferred choice of prostitutes and drug dealers.

for finding of likelihood of confusion).

8

The eighth factor is the degree of care exercised by potential purchasers.  Neither party offers competent summary judgment evidence regarding this factor.  Goldmark suggests that its customers were willing to pay a higher price for a higher-quality, extended-stay residence, but it does not offer proof about the prices it charged its customers or the prices charged by Choice Hotels.[14]  The court concludes that this factor is inapplicable to the present facts.  *See Choice Hotels*, 940 F.Supp.2d at 541 (factor inapplicable to facts where neither party provided evidence regarding factor).

9

In addition to analyzing the digits of confusion, Goldmark urges the court to consider the overall context in assessing the likelihood of confusion.  The digits of confusion discussed above are non-exhaustive, "[n]o digit is dispositive, and the digits may weigh differently from case to case, 'depending on the particular facts and circumstances involved.'"  *Xtreme Lashes*, 576 F.3d at 227 (quoting *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985)).  The court agrees with Goldmark that a consideration of the context is appropriate.  *See, e.g., Scott Fetzer*, 381 F.3d at 485-86 ("Therefore, in addition to the digits of confusion, the particular context in which the mark

---

[14]There are several photographs in the summary judgment record indicating a price for a month-long stay at the Amerigold Suites. *See, e.g.,* D. App. 37. But Goldmark neither points to this evidence as a basis for measuring the degree of care exercised by potential purchasers, nor does it provide any evidence of the prices charged by Choice Hotels.

appears must receive special emphasis."). But contrary to Goldmark's position, the context

supports the conclusion beyond peradventure that there is a likelihood of confusion.

Goldmark contends that the typical consumer exercising ordinary caution would not

have been confused by the continued display of Choice Hotels' marks on the Goldmark Hotel

Property because other signage, including business cards at the front desk, bore the name and

logo of Amerigold Suites, and as soon as a potential consumer walked inside the hotel, he

would have realized the difference. In support of its argument, Goldmark relies on *National*

*Business Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526 (5th Cir. 2012). That

reliance is misplaced. In *National Business* a commercial printer supplied several used-car

dealers that had no affiliation with Ford Motor Co. ("Ford") promotional materials bearing

Ford's logos in combination with the logos of other car brands. *Id.* at 530-31. The district

court entered judgment for Ford, finding the printer liable for trademark infringement on the

theory that the promotional materials used Ford's marks in a manner likely to confuse

consumers as to whether Ford endorsed or approved of the dealerships' sales of Ford

vehicles. *Id.* at 533-34. The Fifth Circuit reversed, holding that the district court clearly

erred in finding that the promotional materials were likely to cause confusion. *Id.* at 534.

It reasoned that because each piece of promotional material presented Ford's marks along

with several other automakers' logos, "[t]he grouping of several competitors extinguishes

any possible confusion, particularly where nothing in the district court's findings or in the

record suggests that these used car dealers displayed the Ford marks elsewhere on their lots

or showroom floors." *Id.* The Fifth Circuit also concluded that the typical consumer was not

likely to "perceive that Ford endorsed or approved this diverse array of corporate logos, particularly at dealerships operating under the names 'Greenspoint Dodge Used Car Sales' and 'Tomball Dodge.'"  *Id.*

*National Business* is clearly distinguishable for several reasons, but most fundamentally because it is a case where the plaintiff, who was *not* a competitor to [the defendant as to this category of products,[15] alleged that the defendant reproduced trademarks and applied them to promotional materials intended to be used in commerce by third-party retailers (i.e., the independent dealerships).  In other words, the plaintiff was attempting to hold the defendant liable on a theory that *the third-party retailers'* use of the promotional materials was likely to cause confusion among the retailers' customers.  But because each piece of promotional material that was sold to the retailers contained the corporate logos of at least three other automakers (competitors to Ford), there was no basis to find that a typical consumer would perceive that Ford intended to sponsor the promotional materials.  Here, by contrast, Choice Hotels' theory does not rely on the sale of goods or services by a third-party retailer.  Rather, Goldmark's Amerigold Suites was a direct competitor to Choice Hotels in

---

[15]In a portion of *National Business* that Goldmark does not cite, the Fifth Circuit affirmed the district court's grant of summary judgment to Ford on a different class of products: decals and stickers that contained *only* Ford's marks and *were* offered for direct sale on its website.  *See National Business*, 671 F.3d at 533, 538; *see also Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 2009 WL 3570387, at *3 (S.D. Tex. Oct. 30, 2009) (district court opinion describing category of products).  For this class of products, the commercial printer and Ford were direct competitors, which supported the district court's finding of a likelihood of confusion.  *See National Business*, 671 F.3d at 533 ("[The printer's] products directly compete with products sold by Ford and their licensed marketers, and competition occurs in a relatively small market of buyers[.]").

the hotel services industry, and each of the signs at issue bore only the marks of Choice Hotels, not of others.  Thus the salient features of the commercial relationship in *National Business* do not exist here.

Contrary to Goldmark's contention, the overall context supports the conclusion that Choice Hotels has demonstrated beyond peradventure that there is a likelihood of confusion. Before the termination of the Franchise Agreement between Choice Hotels and Kroopa, the Goldmark Hotel Property was operated as a licensed Quality Suites.  After the Franchise Agreement was terminated and Goldmark took over operations, the continued display of the Quality Marks would likely cause confusion among consumers—especially among those consumers who were under the mistaken impression that the Goldmark Hotel Property was still a licensed Quality Suites.  Although Goldmark was not the former franchisee, the likelihood-of-confusion logic that courts observe in failed franchisee cases nevertheless applies to this situation because an ordinary consumer would not have been able to perceive a difference between Kroopa (the former franchisee) and Goldmark (the entity that foreclosed on the Goldmark Hotel Property).  *Cf. TGI Friday's Inc.*, 652 F.Supp.2d at 767 ("Therefore, if [former franchisees] are using the marks without [the franchisor's] consent, it is evident that there is a likelihood of consumer confusion between licensed . . . restaurants and defendants' restaurants."); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks."). The typical consumer exercising ordinary caution would have observed the continued display

of Choice Hotels' exact marks on the Goldmark Hotel Property and would not have known that the hotel was no longer a licensed Quality Suites or that the hotel was under different ownership.

The fact that Goldmark changed other signage on the Goldmark Hotel Property and had materials inside the hotel that bore the Amerigold Suites name and logo does not change this result. As the Eighth Circuit observed in *Downtowner/Passport International Hotel Corp. v. Norlew, Inc.*, 841 F.2d 214 (8th Cir. 1988):

> any dissipation of confusion due to the existence of . . . items [with other names or logos] does not cure the likelihood of confusion that initially existed upon entering the hotel. . . . [W]e find that a travel weary hotel patron might not notice the inconsistent trademarks. He or she would, thus, still assume that the hotel was [one of plaintiff's hotels]. Bad experiences may deter the traveler from staying at [another one of plaintiff's hotels] at his or her next destination. And, if a traveler did conclude that the hotel was not [one of plaintiff's hotels] it is uncertain whether a traveler would gather up his or her luggage and begin a search for another hotel.

*Id.* at 219-20 (citations omitted). Similarly, in this case, potential customers looking for a hotel would have observed from the road two signs bearing Choice Hotels' exact marks. There is a substantial likelihood that a typical consumer traveling on the road would have seen these signs and mistakenly believed that the Goldmark Hotel Property was a licensed Quality Suites. Even if signage and other items inside the hotel indicated that the hotel was actually an Amerigold Suites, any dissipation of confusion would not have cured the likelihood of confusion that initially existed upon seeing the signs and entering the Goldmark Hotel Property.

- 25 -

"While likelihood of confusion is typically a question of fact, summary judgment is proper if the 'record compels the conclusion that the movant is entitled to judgment as a matter of law.'"   *Xtreme Lashes*, 576 F.3d at 227 (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)).  The record does not contain any evidence that creates a genuine issue of material fact regarding the likelihood of confusion.  Both the digits of confusion—especially the first two factors—and the overall context support a finding that Goldmark's continued use of the Quality Marks created a likelihood of confusion.  None of the digits of confusion clearly favors the opposite conclusion.  Choice Hotels has therefore established a likelihood of confusion beyond peradventure.

D

Because Choice Hotels has established beyond peradventure the ownership of a legally protectable mark and infringement of that mark, it is entitled to summary judgment as to liability on its claim for trademark infringement under 15 U.S.C. § 1114.

IV

Choice Hotels also moves for summary judgment on its claims for false designation of origin under 15 U.S.C. § 1125(a), common law trademark infringement under Texas law, and common law unfair competition under Texas law, contending that facts establishing liability for these claims are identical to those establishing liability for trademark infringement under 15 U.S.C. § 1114.  Goldmark concedes that liability for trademark infringement under § 1114 establishes liability for Choice Hotels' other claims.

The court holds that Choice Hotels is entitled to summary judgment on its claim for false designation of origin under § 1125(a), common law trademark infringement under Texas law, and common law unfair competition under Texas law. *See Choice Hotels*, 940 F.Supp.2d at 538 ("Nevertheless, the Court must only conduct one inquiry to determine the [defendants'] liability because . . . the facts that support an action for trademark infringement under the Lanham Act also support the other three actions); *see also Philip Morris USA Inc. v. Lee*, 547 F.Supp.2d 667, 674 (W.D. Tex. 2008) ("The elements of trademark infringement and false designation of origin are identical, and the same evidence will establish both claims." (citations omitted)); *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F.Supp.2d 622, 637 (N.D. Tex. 2009) (Kinkeade, J.) ("A determination of a likelihood of confusion under federal law is sufficient to prove trademark infringement under Texas law." (citing *Elvis Presley*, 141 F.3d at 193)); *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App. 2001, pet. denied) ("A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App. 1992, no writ)).

## V

Choice Hotels requests that the court grant a permanent injunction enjoining Goldmark from using any of the Quality Marks. Goldmark opposes Choice Hotels' request for injunctive relief, reiterating many of the same arguments it made on the merits. The only

argument not previously addressed *supra* in § III is Goldmark's contention that Choice Hotels is not entitled to a permanent injunction because both signs have been removed from the Goldmark Hotel Property as of the date Choice Hotels filed its motion for summary judgment and there is no evidence that there is a threat of future injury to Choice Hotels.

The Lanham Act vests district courts with the jurisdiction to grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Were Choice Hotels seeking a preliminary injunction, it would be required to establish each of the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to Choice Hotels outweighs the threatened harm the injunction may do to Goldmark; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). "Where a plaintiff seeks permanent injunctive relief, the test is the same, except that 'the movant must show actual success on the merits of the claim, rather than a mere likelihood of such success.'" *Caroline T. v. Hudson Sch. Dist.*, 915 F.2d 752, 755 (1st Cir.1990) (quoting *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir.1989)). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).

The court holds that Choice Hotels has not established beyond peradventure that it is entitled to a permanent injunction.  The first factor (actual success on the merits) is satisfied, but there are disputed issues of material fact that preclude summary judgment as to the remaining factors.  Although there is evidence in the record suggesting that Choice Hotels ultimately may be entitled to a permanent injunction, the beyond peradventure burden is heavy, and Choice Hotels has not met this burden as to its request for such an extraordinary remedy.  *See, e.g., DSC Commc'ns Corp. v. Next Level Commc'ns*, 107 F.3d 322, 328 (5th Cir. 1997) (noting that "it is clear injunctions are an extraordinary remedy, to be granted only when a party is threatened with injury for which he cannot obtain a sufficient legal remedy").  Moreover, Goldmark has adduced evidence that would permit a reasonable trier of fact to find that Goldmark was slow to remove the signs in question only because it considered the cost of doing so to be prohibitive, not because it intended to trade on Choice Hotels' trademarks.  Goldmark was not the former franchisee; it was a beneficiary of a deed of trust under which the Goldmark Hotel Property was foreclosed on.  So this is not, for example, a case in which a former franchisee intentionally traded on the franchisor's trademarks after their franchise agreement was terminated.  *See, e.g., TGI Friday's Inc.*, 652 F.Supp.2d at 766-67 ("Defendants concede that they did not cease using [plaintiff's] marks on receipt of the termination letters, and that they continue to use the marks and hold their restaurants out as [licensed locations of the plaintiff].").  There is also evidence that, by the time Choice Hotels filed this summary judgment motion, Goldmark had painted over, covered up, or otherwise removed the signs in question and that no signs bearing Quality Marks are

currently visible on the Goldmark Hotel Property.  And there is evidence that Goldmark removed other signage and paraphernalia with Choice Hotels' marks before Choice Hotels filed this lawsuit; that Goldmark uses its own online reservation system; and that Goldmark holds itself out to potential customers as an Amerigold Suites, not a Quality Suites.  Choice Hotels has therefore failed to establish under the heavy beyond peradventure that it is threatened with irreparable injury.  Accordingly, Choice Hotels' motion for summary judgment is denied to the extent it seeks a permanent injunction.[16]

VI

In addition to its request for injunctive relief, Choice Hotels moves for summary judgment on monetary damages.  Choice Hotels requests damages in the form of (1) Goldmark's profits during the period of infringement, (2) actual damages as measured by a reasonable royalty, and (3) a trebling of damages.

A

The Lanham Act provides, in pertinent part, that subject to the principles of equity, a plaintiff shall be entitled

> to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . .  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment,

---

[16]Choice Hotels also requests injunctive relief in the form of (1) an order requiring Goldmark to deliver to Choice Hotels any item in its possession, custody, or control bearing any of the Quality Marks, and (2) an order requiring Goldmark to file a sworn statement of compliance.  These requests are also denied at the summary judgment stage.

according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a).  "Though the district court has discretion in determining an equitable damages award, genuine disputes concerning material facts, such as the actual amount of damages or the willfulness of infringement, may still preclude a summary judgment award of damages."  *Choice Hotels*, 940 F.Supp.2d at 543-44.

B

The first form of monetary damages Choice Hotels seeks is Goldmark's profits during the period of infringement.  "An award of the defendant's profits is not automatic."  *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000).  The Fifth Circuit has "identified a non-exhaustive list of factors to determine when a plaintiff is entitled to an accounting of the defendant's profits under § 1117(a): (1) whether the defendant intended to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting [its] rights; (5) the public interest in making the conduct unprofitable; and (6) whether it is a case of palming off."  *Id.* (paragraph breaks omitted).  "If the court determines that an accounting of profits is appropriate, the plaintiff is entitled to only those profits attributable to the unlawful use of its trademark."  *Id.*

The court holds that Choice Hotels has failed to establish beyond peradventure that it is entitled to Goldmark's profits.[17]  Choice Hotels presents a profit and loss accounting statement from Goldmark as a basis for determining Goldmark's profits during the relevant period.[18]  *See* P. Br. 19-20; P. App. 220-221.  But it subsequently attacks the accuracy of the statement with other evidence, contending that other documents show that Goldmark reported higher net profits during the same period.  *See* P. Br. 20; P. App. 223-27.  Choice Hotels disputes some of the deductions listed on the profit and loss statement—disputes that raise genuine issues of material fact as to the amount of Goldmark's profits during the relevant period.  Moreover, Choice Hotels does not address until its reply brief the six factors for determining whether a plaintiff is entitled to an accounting of defendant's profits.  Genuine issues of material fact as to some of these factors remain to be tried.  *See Choice Hotels*, 940 F.Supp.2d at 546 (denying summary judgment as to profits).  Summary judgment is therefore inappropriate as to Choice Hotels' request for Goldmark's profits.

---

[17]In its reply, Choice Hotels requests leave to supplement this motion with additional evidence regarding Goldmark's profits.  Because Choice Hotels will have the opportunity to provide additional evidence at trial, the court denies this request.

[18]The precise end date for the relevant period is not clear from the summary judgment briefing and record.  For example, Choice Hotels states in its reply that Goldmark "left the 'towering sign' with the Quality Suites® name uncovered and displayed in front of its hotel through *at least* April 2012."  P. Reply 6 (emphasis added).  The precise termination date of the relevant period is potentially relevant to the amount of damages owed by Goldmark.

C

The second form of monetary damages Choice Hotels requests is actual damages as measured by a reasonable royalty. Relying on *Boston Professional Hockey Ass'n*, 597 F.2d 71, and related cases, Choice Hotels argues that it is entitled to royalties based on the royalty formula that was in effect under the Franchise Agreement between Choice Hotels and Kroopa. Under this formula, Choice Hotels was to receive 8.5% of Kroopa's gross room revenue. Goldmark responds that Choice Hotels' damages theory is not legally viable because there was never any prior licensing relationship between it and Choice Hotels, so the reasonable royalties method of calculating actual damages is inapposite. It does not respond to Choice Hotels' damages estimate as a factual matter.

The court holds that Choice Hotels' damages theory is legally viable but that Choice Hotels has not established beyond peradventure the amount of actual damages. Goldmark has not cited any authority holding that a prior licensing agreement between the parties is a prerequisite to using a reasonable royalty to measure damages for trademark infringement. In fact, in *Boston Professional Hockey Ass'n* there was never any licensing arrangement between the parties because the defendant's attempts to secure a licensing agreement had failed. *See Bos. Prof'l Hockey Ass'n*, 597 F.2d at 74. The Fifth Circuit nevertheless held that the plaintiff's damages should have been determined by the royalty formula that had been offered during the licensing negotiations. *Id.* at 76 ("Based upon a $15,000 offer for a three-year contract, [the defendant's] four-year infringement of the right to manufacture and sell three-inch emblems damaged plaintiffs in the amount of $20,000."). Accordingly,

- 33 -

*Boston Professional Hockey Ass'n* suggests that a prior licensing arrangement is not a prerequisite to using a reasonable royalty method to calculate damages. And in other cases, the Fifth Circuit has approved of using this method. *See Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 371 (5th Cir. 2004) ("The amount that a party hypothetically would have agreed to pay as a reasonable royalty for use of the mark is sometimes used as a measure of damages in trademark actions, especially those involving licensing relationships."); *see also Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1126 (5th Cir. 1991) (affirming damages award based on initial franchise fee of $10,000 per store and continuing royalty of 1% in trade dress infringement case under Lanham Act). This method can make economic sense, assuming the royalty formula bears a rational relationship to the rights appropriated by the infringer,[19] because an estimated royalty can serve as a proxy for the value that Choice Hotels would have received had Goldmark been licensed to use its marks. *See* Restatement (Third) of the Law of Unfair Competition § 36, cmt. d (1995) ("The former royalty rate may then be one of several reasonable measures of the plaintiff's loss.").

---

[19]The court expresses no view as to whether the royalty formula proposed by Choice Hotels bears a rational relationship to the rights appropriated by Goldmark. Some courts have noted that the use of a royalty formula derived from a prior licensing arrangement provides a windfall to the plaintiff where the defendant did not receive all of the benefits associated with the licensing arrangement. *See, e.g., Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 920 (Fed. Cir. 1984); *see also* Restatement (Third) of the Law of Unfair Competition § 36, cmt. d (1995) (noting that "in some cases the royalty measure may also fail to account for the absence of other benefits and burdens present in an actual licensing relationship").

- 34 -

Although its damages theory is legally viable, Choice Hotels has not established beyond peradventure the amount of its actual damages.  It cites the Franchise Agreement between it and Kroopa and argues that a royalty rate of 8.5% of Goldmark's gross room revenue is an appropriate damages estimate.  Goldmark does not dispute this damages estimate as a factual matter, but its failure to respond does not permit the court to enter a "default" summary judgment on this issue.  Even though the evidence is undisputed, Choice Hotels has not established beyond peradventure that the royalty formula is appropriate as applied to these facts.  The Franchise Agreement includes a "royalty fee" of 4.65% of the hotel's gross room revenue and a "system fee" of 3.85% of the hotel's gross room revenue "for the ongoing development, maintenance and upgrading of the Property Management System and Reservation System, and for advertising, publicity, public relations, marketing, reservations and other similar services that [Choice Hotels] will provide [the licensee]."  P. App. 52.  It is not clear on the basis of the summary judgment briefing and record whether the "system fee" should be included as part of the royalty rate because it is undisputed that Goldmark did not use Choice Hotels' online reservation system for the Goldmark Hotel Property.  It is also unclear whether Goldmark availed itself of the other benefits mentioned in the monthly fees clause, suggesting that the formula may provide a windfall to Choice Hotels.  Accordingly, Choice Hotels has not established beyond peradventure that applying the full 8.5% royalty rate bears a rational relationship to the rights appropriated by

Goldmark.[20]  Summary judgment is therefore unwarranted as to Choice Hotels' request for actual damages.

D

Choice Hotels also requests treble damages.  Goldmark responds that trebling of damages is not appropriate under the facts and circumstances of this case.  Because the court has concluded that Choice Hotels is not entitled to summary judgment as to damages, there is no predicate for Choice Hotels' request for trebling.  Accordingly, the court denies this request as premature.

VII

Finally, Choice Hotels requests leave to provide supplemental documentation regarding its costs and to move for attorney's fees.  The Lanham Act provides that, subject to principles of equity, the plaintiff shall be entitled to recover "the costs of the action," and, "in exceptional cases," the court may award "reasonable attorney fees."   15 U.S.C. § 1117(a)(3).  Because Choice Hotels is not entitled to summary judgment as to remedies, its remedies claims remain for trial.  Choice Hotels will have the opportunity—for example, in the context of an attorney's fees application filed under Rule 54(d)(2)—to apply for attorney's fees and nontaxable costs.  The court therefore denies Choice Hotels' request for

---

[20]The full 8.5% royalty rate may in fact bear a rational relationship to the rights appropriated by Goldmark.  The court expresses no view on the ultimate merits of this particular damages estimate other than to say that the summary judgment briefing and record do not establish beyond peradventure that Choice Hotels is entitled to the damages award that it proposes.

leave as premature.  The court expresses no view about whether this case is "exceptional" within the meaning of § 1117(a)(3).

\*   \*   \*

For the reasons explained, the court grants Choice Hotels' motion for summary judgment as to liability on its claims for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), common law trademark infringement under Texas law, and common law unfair competition under Texas law, but denies the motion as to remedies.

**SO ORDERED.**

February 19, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE